UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

RAYMOND TODD CARRIGER,      )
                                    )
          Plaintiff,         )
                                      )
                                      )
v.                             )     3:08-CV-514
                                      )     (VARLAN /GUYTON)
                                      )
MICHAEL J. ASTRUE,           )
Commissioner of Social Security,      )
                                      )
          Defendant.      )

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of Plaintiff's Motion for Summary Judgment [Doc. 11] and Defendant's Motion for Summary Judgment [Doc. 15]. Plaintiff Raymond Todd Carriger ("Plaintiff") seeks judicial review of the decision of Administrative Law Judge ("ALJ") Joan Lawrence denying him benefits, which is the final decision of Defendant Michael J. Astrue, Commissioner of Social Security ("the Commissioner").

On April 7, 2005, Plaintiff filed an application for supplemental security income ("SSI") benefits. [Tr. 8]. On April 12, 2005, Plaintiff filed an application for disability insurance benefits ("DIB"). [Tr. 8]. On both applications, Plaintiff alleged a period of disability which began on December 15, 2001. [Tr. 8]. After his application was denied initially and also denied upon reconsideration, Plaintiff requested a hearing. On October 16, 2007, a hearing was held before ALJ Joan Lawrence to review determination of Plaintiff's claim. [Tr. 407-429]. On May 22, 2008, the

ALJ found that Plaintiff was not under a disability from December 15, 2001, through the date of the decision. [Tr. 8-19]. The Appeals Council denied Plaintiff's request for review; thus the decision of the ALJ became the final decision of the Commissioner. [Tr. 2-5]. Plaintiff now seeks judicial review of the ALJ's decision.

## I.     ALJ FINDINGS

The ALJ made the following findings:

1. The claimant met the insured status requirements of the Social Security Act through June 30, 2006.

2. The claimant has not engaged in substantial gainful activity since December 15, 2001, the alleged onset date (20 C.F.R. 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. The claimant has the following severe impairments: disorders of the back, affective/mood disorders, diabetes mellitus, and substance abuse (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except he is limited but can still relate to co-workers; maintain attention and concentration; understand, remember, and carry out detailed instructions; relate predictably in social situations; respond appropriately to changes in the work setting; maintain a regular schedule; work close to others without undue distraction; complete a normal workweek; accept instructions/criticism appropriately; and set realistic goals. He is seriously limited but not precluded in his ability to deal with the general public.

6. The claimant is capable of performing past relevant work as a fast food cook, kitchen helper, and warehouse worker. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7.     The claimant has not been under a disability, as defined in the Social Security Act, from December 15, 2001, through the date of this decision (20 C.F.R. 404.1520(f) and 416.920(f)).

[Tr. 10-17].

## II.    DISABILITY ELIGIBILITY

An individual is eligible for DIB payments if he is insured for DIB, has not attained retirement age, has filed an application for DIB, and is under a disability. 42 U.S.C. § 423(a)(1). An individual is eligible for SSI payments if he has financial need and he is aged, blind, or under a disability. See 42 U.S.C. § 1382(a). "Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). An individual shall be determined to be under a disability only if his physical and/or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

Whether a DIB or SSI claimant is under a disability is evaluated by the Commissioner pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant bears the burden of proof at the first four steps. Id. The burden of proof shifts to the Commissioner at step five. Id. At step five, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).


## III.    STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled, the Court is limited to determining whether the ALJ applied the correct legal standards and whether there is substantial evidence in the record to support the ALJ's findings. Longworth v. Comm'r of Soc. Sec., 402 F.3d 591, 595 (6th Cir. 2005). If the ALJ's findings are supported by substantial evidence based upon the record as a whole, they are conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Heston v. Comm'r of Soc. Sec., 245 F.3d 528, 534 (6th Cir. 2001) (quoting Richardson v. Perales,

402 U.S. 389, 401 (1971)).  It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ or whether the reviewing judge may have decided the case differently.  Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986).  The substantial evidence standard is intended to create a "zone of choice within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)).  The Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." Walters, 127 F.3d at 528.  On review, Plaintiff bears the burden of proving his entitlement to benefits.  Boyes v. Sec'y. of Health & Human Serv.,46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

## IV.    ANALYSIS

On appeal, Plaintiff argues that substantial evidence does not support the ALJ's determination that he was not under a disability.  Plaintiff contends that his mental impairments "clearly meet the criteria listings in Sections 12.04, 12.06, or 12.09," and that the ALJ erred by finding to the contrary.  [Doc. 11 at 2].  Plaintiff argues that the ALJ erred when determining that he did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, by:

(i) relying on evidence that was "outweighed by stronger evidence," [Doc. 11 at 9];

(ii) failing to give appropriate weight to the opinions of three treating and examining specialists, Dr. Jeffrey B. Davis, Psy.D. [Tr. 63-68, 229-234], Dr. B. Dudani [Tr. 192], and Tracy Allred, Ed.D. [Tr. 177-186], and one vocational consultant, Julian Nadolsky, Ed.D. [Tr. 187-190];

(iii) improperly evaluating the credibility of Plaintiff's statements and testimony about the

5

severity and limiting effects of his mental impairments.

Plaintiff also contends that the ALJ improperly determined his physical residual functional capacity ("RFC"). [Doc. 11 at 7]. Plaintiff argues that the ALJ erred in making this determination by failing to give appropriate weight to the opinions of Dr. Linda Hunter [Tr. 193-196] and Dr. Jeffrey Summers, M.D. [Tr. 241-243]. Plaintiff argues that this error caused the ALJ to make an RFC determination that was incorrect and unsupported by the record. Plaintiff further argues that the ALJ's incorrect determination of his RFC led to an improper finding that he is capable of performing his past relevant work. [Doc. 11 at 8]. Plaintiff maintains that he is unable to perform basic job functions and is therefore unable to obtain gainful employment. Accordingly, Plaintiff concludes that he is under a disability and entitled to DIB and SSI payments.

The Commissioner, in response, contends that the ALJ considered the entire record and that substantial evidence supports her determinations that Plaintiff did not have a listed mental impairment and that Plaintiff had the RFC to perform his past relevant work. [Doc. 16]. The Commissioner argues that the ALJ properly considered and weighed all of the opinion evidence in the record and properly evaluated Plaintiff's credibility. The Commissioner concludes that substantial evidence supported the ALJ's determination that Plaintiff had the RFC to perform his past relevant work and therefore was not under a disability and not entitled to DIB and SSI payments.

A.    **The ALJ's finding regarding Plaintiff's mental impairments was supported by substantial evidence.**

Once an ALJ determines that a claimant's mental impairment is severe, he must next determine whether it meets or is medically equivalent to a listed mental disorder. 20 C.F.R. §

404.1520a(d)(2). If the ALJ determines that the claimant's severe impairment meets or equals a listed mental disorder, then the claimant is disabled and there is no need to consider his age, education, or work experience to make a determination of his RFC. 20 C.F.R. §404.1520(d)-(e). If the ALJ determines that the claimant's severe mental impairment does *not* meet or equal a listed mental disorder, then he must go on to assess the claimant's RFC. 20 C.F.R. § 404.1520a(d)(3).

In this case, the ALJ found that Plaintiff had two severe mental impairments: affective/mood disorders and substance abuse. [Tr. 10]. The ALJ then determined that these impairments, individually and in combination, did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [Tr. 11] (citing 20 C.F.R. §§ 404.1520(d); 404.1525; 404.1526; 416.920(d); 416.925; and 416.926). The ALJ specifically stated, "No treating or examining physician has suggested the presence of any impairment or combination of impairments of listing level severity." [Tr. 11]. Plaintiff argues that the ALJ's determination was not supported by substantial evidence because (i) any evidence supporting the determination "was outweighed by stronger evidence," [Doc. 11 at 9]; (ii) the ALJ improperly weighed opinion evidence about the diagnosis, severity, and limiting effects of Plaintiff's impairments; and (iii) the ALJ improperly evaluated Plaintiff's credibility. Plaintiff contends that his mental impairments "clearly meet the criteria listings in Sections 12.04, 12.06, or 12.09," and that the ALJ erred by finding to the contrary. [Doc. 11 at 2].

As an initial matter, the Commissioner correctly points out that "a finding that Plaintiff's condition met [Section] 12.09 would not advance his cause, as Plaintiff would not be eligible for benefits if substance abuse was a factor material to a finding of disability." [Doc. 16 at 12] (citing 42 U.S.C. § 423(d)(2)(c) ("An individual shall not be considered to be disabled for the purposes of this subchapter if alcoholism or drug addiction would (but for this paragraph) be a contributing

factor material to the Commissioner's determination that the individual is disabled.")); see 20 C.F.R. § 404, Subpt. P, App. 1, §12.00 ("Listing 12.09 is structured as a reference listing; that is, it will *only* serve to indicate which of the *other* listed mental or physical impairments must be used to evaluate the behavioral or physical changes resulting from the regular use of addictive substances.") (emphasis added). The Court therefore rejects Plaintiff's arguments as they relate to 20 C.F.R. § 404, Subpt. P, App. 1, §12.09. The Court addresses in turn Plaintiff's three arguments as they relate to 20 C.F.R. § 404, Subpt. P, App. 1, §12.04 and §12.06.

### (i) **Plaintiff's first argument misstates the applicable law**.

Plaintiff first argues that the ALJ's determination that his mental impairments did not meet or equal 12.04 and/or 12.06 listings was not supported by substantial evidence because any evidence supporting the determination "was outweighed by stronger evidence." [Doc. 11 at 9]. The Court finds that this argument is misplaced given the applicable law.

Plaintiff essentially makes a broad argument that the cumulative weight of all of the evidence in the record supports a finding that his mental impairments *did* meet or equal the 12.04 and/or 12.06 listings. Plaintiff does not clearly argue that the evidence upon which the ALJ based his contrary conclusion was insubstantial. Instead, Plaintiff merely argues that the evidence relied upon by the ALJ was not as strong as other evidence that indicated that Plaintiff's mental impairments met or equaled the listings. Thus, the Court finds that Plaintiff has not even alleged an error by the ALJ that would justify remand.

The Court reiterates that the fact that Plaintiff's record may possess substantial evidence to support a different conclusion than that reached by the ALJ, or that the Court itself might have decided Plaintiff's case differently, is irrelevant. See Crisp, 790 F.2d at 453 n.4. It is not the

8

Court's place to "try the case de novo" or "resolve conflicts in the evidence." Walters, 127 F.3d at 528. The Court cannot reweigh the evidence contained in the record to make its own determination of whether Plaintiff's impairments met or equaled the 12.04 and/or 12.06 listings. See Longworth, 402 F.3d at 595. Instead, the Court must only look to see that substantial evidence existed for the determination that was made by the ALJ. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Heston v. Comm'r of Soc. Sec., 245 F.3d 528, 534 (6th Cir. 2001) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). In this case, Plaintiff only argues that the evidence relied upon by the ALJ was "outweighed by stronger evidence." Even if Plaintiff's argument were accepted by the Court, the fact that evidence relied upon by the ALJ is undermined by other stronger evidence is insufficient to warrant remand.

**(ii)** **The ALJ properly considered the opinion evidence.**

Plaintiff next argues that the ALJ erred when finding that his mental impairments did not meet or equal the 12.04 and/or 12.06 listings by failing to give appropriate weight to the opinions of three treating and examining specialists, Dr. Jeffrey B. Davis, Psy.D. [Tr. 63-68, 229-234], Dr. B. Dudani [Tr. 192], and Tracy Allred, Ed.D. [Tr. 177-186], and one vocational consultant, Julian Nadolsky, Ed.D. [Tr. 187-190]. The Commissioner argues that the ALJ appropriately considered these opinions and that substantial evidence supported the ALJ's decisions about the weight to which each was entitled. [Doc. 16 at 14-18].

When determining whether a claimant's mental impairments meet or equal the Appendix 1 listings, an ALJ is required to evaluate every medical opinion in the record, regardless of its source. See 20 C.F.R. § 404.1527(d). A "medical opinion" is defined as a statement from a physician, psychologist, or "other acceptable medical source" that reflects "judgments about the nature and

9

severity of [a claimant's] impairment(s)." 20 C.F.R. § 404.1527(a)(2). A medical source is considered a *treating* medical source if he has provided medical treatment or evaluation and has had an ongoing treatment relationship with the claimant "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation [that is] typical for the [treated condition(s)]." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 407 (6th Cir. 2009) (quoting 20 C.F.R. § 404.1502). An ALJ "must" give a medical opinion provided by a *treating* source controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and it is "not inconsistent with the other substantial evidence in the case record." Wilson, 378 F.3d at 544; see 20 C.F.R. § 404.1527(d)(2). If an ALJ decides not to give controlling weight to the medical opinion of a treating source, he is required to explain why in his narrative decision. 20 C.F.R. § 404.1527(d)(2); Shelman v. Heckler, 821 F.2d 316, 321 (6th Cir. 1987) (stating that while an ALJ is not bound by the opinions of a plaintiff's treating physicians, he is required to set forth some basis for rejecting these opinions). The ALJ is also required to provide in his narrative "good reasons" justifying the weight that he actually gave to the treating source's opinion when reaching his decision. 20 C.F.R. § 404.1527(d)(2); Blakley, 581 F.3d at 401 (remanding a claim to the Commissioner "because the ALJ failed to give good reasons for discounting the opinions of [the claimant]'s treating physicians"). In order to determine the proper weight to give to a treating source's opinion, the ALJ must conduct a six-factor analysis. See 20 C.F.R. § 404.1527(d)(2). The ALJ must consider (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of and evidentiary basis for the opinion; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the source; and (6) anything else that tends to support or contradict the opinion. 20 C.F.R. § 404.1527(d)(2)-(6).

### *1.     Dr. Davis*

In preparation for the ALJ hearing, Plaintiff's counsel deposed Plaintiff's treating clinical psychologist, Dr. Jeffrey B. Davis., Psy.D., on June 1, 2005. [Tr. 63-68, 229-234]. During the deposition, Dr. Davis provided the following opinions that were relevant to the ALJ's determination of whether Plaintiff's mental impairments met or equaled the 12.04 and/or 12.06 listings[1]:

> 1. "At times" Plaintiff's anxiety places him in a situation that is particularly debilitating to the point where he cannot function, [Tr. 65];
>
> 2. Plaintiff suffers from "generalized anxiety disorder," [Tr. 66];
>
> 3. Plaintiff shows no evidence of "psychotic symptoms" and therefore his initial diagnosis of "psychotic disorder" was dropped, [Tr. 66];
>
> 4. Plaintiff exhibits "symptoms or signs of borderline personality disorder," [Tr. 66]; and
>
> 5. Plaintiff's mental impairments limit him to the extent that "anything that's going to require sustained effort and concentration, dealing with the public, [or even] getting out of the house [on] some days, is going to be almost impossible for him on a regular basis." [Tr. 66-7].

Plaintiff contends that Dr. Davis was a treating psychologist and, as such, his opinions were entitled

---

[1] Dr. Davis also provided some opinions that were *not* relevant to the ALJ's determination. For example, Dr. Davis stated, "At present, I don't feel like [Plaintiff] is capable of holding down a full-time position. Actually, I don't think he's capable of holding down a part-time job if–especially if–it involves being around a lot of people." [Tr. 66]. Plaintiff argues that Dr. Davis "gave his professional opinion that Plaintiff was not capable of holding any substantial gainful employment." [Doc. 11 at 4]. Plaintiff also appears to argue, incorrectly, that Dr. Davis's opinion about his ability to work was a treating source medical opinion that was entitled to deference from the ALJ. In fact, Dr. Davis's deposition testimony about Plaintiff's employability was not entitled to receive "any special significance." See 20 C.F.R. § 404.1527(e)(3). A statement by a medical source that a claimant is "disabled" or "unable to work" is an opinion on an issue reserved to the Commissioner and it is not controlling in any way. 20 C.F.R. § 404.1527(e)(1), -(2).

to controlling weight in the ALJ's analysis of whether Plaintiff's mental impairments met or equaled the 12.04 and/or 12.06 listings. [Doc. 11 at 2-5]. Plaintiff argues that the ALJ erred by discounting or rejecting Dr. Davis's opinions without providing any valid reasons for doing so.

The ALJ expressly addressed Dr. Davis's deposition testimony as follows:

> "The claimant's treating psychologist, Dr. Davis, has reported that he did not feel that Mr. Carriger was capable of working in either a full-time or part-time job since he is unable to sustain effort and concentration, to deal with the public, or even to get out of the house on a regular basis. The undersigned notes that the treating [psychologist]'s *opinion is not supported by the clinical and diagnostic evidence of record contained in the associated treatment and follow-up reports*. The doctor apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true, most if not all, of what the claimant reported. Yet, as explained elsewhere in this decision, there exist good reasons for questioning the reliability of the claimant's subjective complaints." [Tr. 15] (emphasis added).

It is clear from the accurate recapitulation of Dr. Davis's testimony that the ALJ thoroughly reviewed Dr. Davis's opinions. It is also clear that the ALJ provided a reason, italicized above, for discounting the weight accorded to those opinions. Because Dr. Davis was Plaintiff's treating psychologist, the ALJ was required to give his relevant medical opinions controlling weight if those opinions were "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in the case record." Wilson, 378 F.3d at 544; see 20 C.F.R. § 404.1527(d)(2), -(3). But the ALJ found that Dr. Davis's opinions were *not* supported by Plaintiff's treatment record and *were* inconsistent with the record as a whole. If the ALJ's finding was supported by substantial evidence, then it was a valid reason for discounting Dr. Davis's opinions.

Plaintiff offers no argument that "the clinical and diagnostic evidence of record contained in the associated treatment and follow-up reports" actually supports Dr. Davis's opinions. Instead,

12

Plaintiff only makes two unpersuasive arguments in an attempt to show that the ALJ's stated reason for discounting Dr. Davis's opinion was not supported by substantial evidence. First, Plaintiff makes a summary statement that the ALJ's "claim that the record does not support the opinion of Dr. Davis is simply unfounded." [Doc. 11 at 7]. Because it contains no substance, the Court dismisses this argument. Second, Plaintiff asserts that "[t]here are several instances in the record where medical providers diagnosed [him] with paranoid schizophrenia and other mental illness." [Doc. 11 at 9]. Plaintiff does not cite any of these instances.[2] Accordingly, the Court dismisses Plaintiff's naked assertion.

The Court finds that the ALJ's reason for discounting Dr. Davis's opinion was supported by substantial evidence. The "clinical and diagnostic evidence of record contained in the associated treatment and follow-up reports" to which the ALJ refers consists of "Progress Notes" signed by Dr. Davis and one of his colleagues, a therapist, Ms. Amber Nussbaum. [Tr. 251-70]. Plaintiff does not specifically point to anything in those notes that in fact supports Dr. Davis's opinions. Further, the notes primarily document Plaintiff's subjective self-reporting. In fact, the only clinical observations recorded in the notes are statements that Plaintiff's "affect was anxious," see, e.g., [Tr. 260], or that Plaintiff's "affect was anxious as evidenced by little eye contact with clinician," see, e.g., [Tr. 252]. Given that Plaintiff's treatment record with Dr. Davis is devoid of any other medical signs, laboratory findings, or clinical observations, the Court concludes that the ALJ gave a valid reason for discounting Dr. Davis's opinions.

---

[2] The Court notes that a diagnosis of "schizophrenia, paranoid type, chronic" was recorded by "Dr. B. Dudani" of the Ridgeview Psychiatric Hospital and Center on an unspecified date. [Tr. 192]. A diagnosis of "schizophrenia, paranoid type" was also recorded by Tracy Allred on February 8, 2008. [Tr. 178, 184]. These are the only instances of any reference to schizophrenia in Plaintiff's record found by the Court. The inadequacies of Dr. Dudani's and Ms. Allred's evaluations are discussed *infra*.

Although the ALJ did not specifically lay out the 20 C.F.R. § 404.1527 factor analysis in his decision, he did explain that Dr. Davis did not provide an adequate evidentiary basis to support his opinions, see 20 C.F.R. § 404.1527(d)(3), and that Dr. Davis's opinions were inconsistent with the record as a whole, see 20 C.F.R. § 404.1527(d)(4). The ALJ focused on these two factors to reasonably decide that Dr. Davis's opinions should be discounted. The Court finds that even if the ALJ erred by failing to expressly consider the other factors, the error was harmless and does not warrant remand. The two reasons provided by the ALJ are sufficient to support a determination that Dr. Davis's opinions should be discounted. See Bogle v. Sullivan, 998 F.2d 342, 347 (6th Cir. 1993) ("This court has consistently stated that the [Commissioner] is not bound by the treating physician's opinions, and that such opinions receive great weight only if they are supported by sufficient clinical findings and are consistent with the evidence.").

### 2. Dr. Dudani

Plaintiff argues that the ALJ "failed to consider at any point in her decision the opinions" of treating psychiatrist Dr. B. Dudani. [Doc. 11 at 4]. Plaintiff only cites one document in the record that purportedly contains Dr. Dudani's opinions: a one-page "Primary Care Provider Communication Form" signed by Dr. Dudani and addressed to Dr. Thomas Boduch, M.D., the primary care physician who apparently referred Plaintiff to Dr. Dudani. [Tr. 192]. Dr. Dudani recorded that he diagnosed Plaintiff with "schizophrenia, paranoid type, chronic," and that he prescribed Celexa and Seroquel and advised "medicine and treatment compliance." [Tr. 192].

The ALJ did not expressly discuss Dr. Dudani's diagnosis in her narrative decision. The Court finds that this was reasonable and not an error because Dr. Dudani's one-page "Communication Form" was unsubstantiated by any treatment records. The Commissioner correctly states that "the record does not appear to contain treating records from Dr. Dudani, nor does Plaintiff

14

point to any records before him that the ALJ missed," [Doc. 16 at 16-17], "nor does Plaintiff point to any ongoing mental health treatment for schizophrenia."  [Doc. 16 at 16].  The Court finds that Dr. Dudani's diagnosis is unsupported by the record.  See Bowen v. Yuckert, 482 U.S. 127, 146 n.5 (1987) ("It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so.").

Further, Dr. Dudani's "Communication Form" was not relevant to a determination of whether Plaintiff's mental impairments met or equaled the 12.04 and/or 12.06 listings.  Plaintiff argues that his mental impairments met or equaled the listings because they caused limitations that satisfied the "Paragraph B criteria" contained in each listing.  See 20 C.F.R. § 404, Subpt. P, App. 1, § 12.04(B); 12.06(B).  The "Paragraph B criteria" are satisfied if a mental impairment results in at least two of the following:

> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> 4. Repeated episodes of decompensation, each of extended duration.

> Id.

Nothing in Dr. Dudani's "Communication Form" is probative of the limitations described in the regulation.  Even if Dr. Dudani's diagnosis was supported by the record, it was not evidence that should have been considered by the ALJ when determining whether Plaintiff's mental impairments met or equaled the listings.  See Young v. Sec'y of Health & Human Servs., 964 F.2d 146, 151 (6th Cir. 1990) (mere diagnosis of an impairment does not indicate the severity of the condition nor the limitations, if any, that it imposes).  Accordingly, the Court finds that the ALJ's decision not to rely upon or expressly discuss Dr. Dudani's diagnosis was reasonable and not error.

### 3.    *Tracy Allred*

Plaintiff argues that the ALJ erred by failing to give great weight to the opinions of a state disability determination services ("DDS") consultative psychological examiner, Tracy Allred, Ed.D. Ms. Allred examined Plaintiff on February 8, 2008, [Tr. 180-186], and also provided a Medical Source Statement, [Tr. 177-79]. The ALJ expressly considered Ms. Allred's opinions as follows:

> "Afterwards, the examiner presented conflicting opinions. She opined that the claimant's ability to understand and remember is mildly to moderately limited. His ability to sustain concentration and persistence is moderately to significantly limited. His social interaction is moderately to significantly limited. And his ability to adapt and tolerate stress associated with day-to-day activities is moderately to significantly limited. However, on a Medical Source Statement, [Tr. 177-79], Ms. Allred indicated that the claimant had 'mild' limitation in the ability to make judgments on simple work-related decisions. He has 'moderate' limitation in his ability to understand, remember, and carry out complex instructions; and in the ability to make judgments on complex and work-related decisions. She further reported that the claimant has 'moderate' limitation in his ability to interact appropriately with the public, interact appropriately with supervisors, and interact appropriately with co-workers. He has 'marked' limitation in his ability to respond appropriately to usual work situations and to changes in a routine work setting. However, she also noted that the claimant's ability to interact appropriately with supervision, co-workers, and the public, as well as respond to changes in the routine work setting is not affected by the claimant's impairments. The undersigned notes that although Ms. Allred is an examining source, *these opinions are conflicting*, and *not consistent with the objective evidence of record*. As such, this opinion cannot be given great weight."

[Tr. 14-15].

The ALJ provided two reasons, italicized above, for discounting Ms. Allred's opinion. Plaintiff argues that Ms. Allred's opinions were not conflicting and that Ms. Allred in fact "simply made a mistake in filling out page two (2) of her Medical Source Statement" so that it appeared to contradict her examination notes. [Doc. 11 at 5]. Plaintiff does not, however, attack the validity of the ALJ's

16

second stated reason for discounting Ms. Allred's opinions–that the opinions were "not consistent with the objective evidence of record." [Tr. 15]. The Court does not address Plaintiff's argument because it finds that the ALJ' second reason for discounting Ms. Allred's opinions was supported by substantial evidence.

Because Ms. Allred was an examining source rather than a treating source, her opinions were not entitled to special deference from the ALJ. The ALJ's finding that Ms. Allred's opinions were inconsistent with the objective medical evidence of record was reasonable and supported by substantial evidence. For example, Ms. Allred opined that Plaintiff suffered from schizophrenia, [Tr. 178, 184], but she did not explain any medical signs, laboratory findings, or clinical observations that supported her diagnosis. Further, as an examining psychologist, Ms. Allred only met with Plaintiff on one occasion and otherwise relied upon Plaintiff's treatment record. As discussed *supra*, Plaintiff's treatment record is devoid of substantiated diagnoses of schizophrenia. Accordingly, it was reasonable for the ALJ to discount Ms. Allred's opinions as inconsistent with the objective evidence of record. The Court finds that the ALJ provided a valid reason to support the weight accorded to Ms. Allred's opinions.

### 4. *Julian Nadolsky*

Plaintiff argues that the ALJ erred by failing to give appropriate weight to the Vocational Analysis Report [Tr. 187-190] prepared by vocational consultant Julian Nadolsky, Ed.D. It is not clear from Plaintiff's memorandum at exactly which step of the disability evaluation process the ALJ purportedly failed to give proper weight to Mr. Nadolsky's report. Plaintiff discusses Mr. Nadolsky's report alongside his discussion of opinions provided by Dr. Davis, Dr. Dudani, and Ms. Allred, see, e.g. [Doc. 11 at 5] (stating "Dr. [sic] Allred's evaluation should be given great weight,

as should Dr. Davis, as well as Dr. [sic] Nadolsky's evaluation of the claimant"), so the Court

presumes that Plaintiff intends to argue that Mr. Nadolsky's report should have been given great

weight by the ALJ when she determined whether Plaintiff's mental impairments met or equaled the

12.04 and/or 12.06 listings.

The ALJ expressly considered Mr. Nadolsky's opinion as follows:

> "The undersigned notes that although the doctor stated that the
> claimant is 'disabled,' it is not clear that the doctor was familiar with
> the definition of 'disability' contained in the Social Security Act and
> regulations. It is emphasized that the claimant underwent the
> examination that formed the basis of the opinion in question not in
> an attempt to seek treatment for symptoms, but rather, through
> attorney referral and in connection with an effort to generate evidence
> for the current appeal. Further, the doctor was presumably paid for
> the report. Although such evidence is certainly legitimate and
> deserves due consideration, the context in which it was produced
> cannot be entirely ignored. As such, this opinion cannot be given
> great weight." [Tr. 15-16].

As an initial matter, the Court notes that Mr. Nadolsky is *not* a medical doctor. Mr. Nadolsky is a

self-described "vocational consultant" and he does not hold a medical degree. Nothing in the record

establishes that Mr. Nadolsky is an "acceptable medical source."[3]  See 20 C.F.R. § 404.1513(a).

Accordingly, Mr. Nadolsky's report was not a "medical opinion" and the ALJ was not required to

consider it as such or to accord it any deference at all. See 20 C.F.R. § 404.1527(a)(2). Thus, the

Court finds that the ALJ's consideration of Mr. Nadolsky's report was both reasonable and fair.

The Court also finds that the ALJ provided a valid reason that was supported by substantial

evidence for discounting Mr. Nadolsky's report. The ALJ's observation about the provenance of

the report appears to be accurate. Plaintiff's statement that "[t]here is no evidence in this record that

---

[3] The Court notes that while "licensed or certified psychologists" are listed as acceptable
medical sources, nothing in the record establishes that Mr. Nadolsky is anything other than a
"vocational consultant" with an Ed.D. degree.

indicates Plaintiff was referred to Dr. [sic] Nadolsky by an attorney" is disappointingly disingenuous. As the Commissioner correctly points out, the first page of Mr. Nadolsky's report "clearly states that Plaintiff was referred by Tom McFarland [Plaintiff's counsel], Attorney-at-Law." [Doc. 16 at 18]. The Court concludes that the ALJ's decision to discount Mr. Nadolsky's report was reasonable and supported by substantial evidence.

### 5.    *Conclusion*

The Court finds that the ALJ properly weighed opinion evidence about the diagnosis, severity, and limiting effects of Plaintiff's mental impairments when making her determination that these impairments, individually and in combination, did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.


### (iii)    <u>The ALJ's credibility evaluation did not improperly affect her determination that Plaintiff's mental impairments did not meet or equal the listings.</u>

Plaintiff's final argument is that the ALJ erred when determining that his mental impairments did not meet or equal the 12.04 and/or 12.06 listings by improperly evaluating his credibility. Plaintiff argues that his schizophrenia caused him to be "not in touch with reality," [Doc. 11 at 8], and that it was therefore improper for the ALJ to view his differing self-reports and "confusion over details," [Doc. 11 at 9], as indications of a lack of credibility. Plaintiff further argues that the ALJ should have recognized that his provision of inconsistent testimony and subjective self-reporting was "consistent with the diagnoses and symptoms of paranoid schizophrenia and mental illness." [Doc. 11 at 9].

As an initial matter, the Court reiterates that the record does not support Plaintiff's claim that he suffered from schizophrenia. Accordingly, the Court rejects Plaintiff's suggestion that the ALJ

should have treated his inconsistent testimony as evidence corroborating his overall DIB/SSI claim.

Turning to Plaintiff's argument that the ALJ erred when evaluating his credibility, the Court finds that it is misplaced. While it is true that the ALJ pointed out inconsistencies in Plaintiff's statements, [Tr. 17], it is not apparent that she focused on these inconsistencies or on Plaintiff's credibility generally when determining that Plaintiff's mental impairments did not meet the 12.04 and/or 12.06 listings, [Tr. 11]. Instead, the ALJ summarized some of Plaintiff's self-reported activities and determined that his performance of those activities showed that he was not limited or restricted in his functioning to the extent required to satisfy the "Paragraph B criteria," see 20 C.F.R. § 404, Subpt. P, App. 1, § 12.04(B); 12.06(B). [Tr. 11]. The ALJ found the following:

> "In activities of daily living, the claimant has mild restriction. The claimant has reported that he plays guitar, does some household chores, does laundry, shops, prepares simple meals, and reads.
>
> In social functioning, the claimant has moderate difficulties. The claimant has reported that he plays music in a band and also teaches guitar.
>
> With regard to concentration, persistence, or pace, the claimant has moderate difficulties. The claimant has indicated that he has difficulties with memory and concentration.
>
> As for episodes of decompensation, the claimant has experienced one to two episodes of decompensation."
>
> [Tr. 11].

Importantly, Plaintiff does not argue that he, in fact, did not or cannot perform the activities listed by the ALJ. He also does not argue that his testimony regarding "concentration, persistence, or pace," or "episodes of decompensation" was inaccurate. Accordingly, the Court finds that the ALJ's reliance on Plaintiff's statements when making her determination that Plaintiff's impairments did not meet or equal the listings was reasonable and supported by substantial evidence.

20

**B.    The ALJ's determination of Plaintiff's physical RFC was supported by substantial evidence.**

Plaintiff's second contention is that the ALJ improperly determined his physical RFC. [Doc. 11 at 7]. Plaintiff argues that the ALJ erred in making this determination by failing to give appropriate weight to the opinions of Dr. Linda Hunter [Tr. 193-196] and Dr. Jeffrey Summers, M.D. [Tr. 241-243]. The ALJ determined that Plaintiff had the physical RFC "to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c)." [Tr. 12]. When making this determination, the ALJ expressly discussed the opinion of Dr. Summers, but did not discuss the opinion of Dr. Hunter. Plaintiff argues that Dr. Hunter was his treating physician and, as such, his opinion was entitled to controlling weight. Plaintiff also argues that the ALJ provided no valid reasons for discounting Dr. Summers's opinion and instead "simply insert[ed] her [own] opinion for that of Dr. Summers." [Doc. 11 at 7]. The Court addresses both arguments in turn.

*1.    Dr. Hunter*

The Court finds that the ALJ's decision not to expressly discuss Dr. Hunter's "Report of Findings" [Tr. 193-196] in her narrative decision was reasonable and not error. Dr. Hunter's report provided only the following minimal information:

> 1. Plaintiff had "nerve root compression in lumbar region–low back";
>
> 2. "When Dr. applied pressure on foot, pain was felt in low back";
>
> 3. "When patient raised both legs, pain was felt in low back";
>
> 4. Plaintiff had "vertebral subluxation complex" (VSC) that could lead to "nerve and spinal instability which can irritate other nerves in the spine";
>
> 5. Plaintiff had "muscle spasms in low back";
>
> 6. "Various weakened muscles were found throughout the spine";

21

7. Plaintiff's "VSC findings indicate inflamed areas in the low back"; and

8. Plaintiff was prescribed "initial intensive [chiropractic] care" of one time per week for 12 weeks.

[Tr. 192-196].

Dr. Hunter's report did not contain any information about the severity or limiting effects of Plaintiff's back problems. The report was not accompanied by any additional treatment or follow-up notes. It appears from the record that Plaintiff did not regularly seek treatment for his back problems. The Court finds that Dr. Hunter's report was of insignificant probative value for determining Plaintiff's physical RFC. Further, the Court finds that the scant information summarized above is not at all inconsistent with the RFC determination that was made by the ALJ. Accordingly, the ALJ's decision to exclude any discussion of the report was reasonable and not error.

### 2. *Dr. Summers*

Dr. Jeffrey Summers, M.D., completed a consultative examination of Plaintiff on August 23, 2005 [Tr. 241-243]. The ALJ addressed Dr. Summers's opinion as follows:

> "Dr. Summers's impression was chronic back pain. However, Dr. Summers opined that based on the decrease in range of motion at his lumbar spine, it is reasonable to expect that he will have difficulty with bending, stooping, and lifting greater than 20 pounds on a frequent basis. He will tolerate all other work related activities in this regard. The undersigned notes that while Dr. Summers is an examining source, he noticed and reported that the claimant presented with limited effort. Furthermore, *the objective evidence of record does not support this opinion*. As such, this opinion cannot be given great weight." [Tr. 16].

The Court notes first that because Dr. Summers was an examining source rather than a treating source, his opinion was not entitled to special deference from the ALJ. Even so, the ALJ provided

a valid reason, italicized above, for discounting Dr. Summers's opinion. The record contains no regular treatment notes regarding back problems besides Dr. Hunter's one-time "Report of Findings," discussed *supra*. Plaintiff has pointed to no objective medical evidence in the record that supports Dr. Summers's opinion. Dr. Summers himself stated that Plaintiff's "condition has been evaluated by an unknown physician" and that Plaintiff "has been given an unknown diagnosis." [Tr. 241]. The Court finds that the ALJ's statement that Dr. Summers's opinion is inconsistent with the record is supported by substantial evidence. For example, Dr. David Barron, M.D., conducted a thoracic spine exam and x-ray on August 3, 2000, and reported that Plaintiff had "no compression abnormality" and "no malalignment," and that Plaintiff's spine was "normal." [Tr. 279].

Further, and most importantly, the ALJ's determination of Plaintiff's RFC was supported by substantial evidence. For example, the ALJ's determination was supported by the physical RFC Assessment completed by Dr. Frank Pennington, M.D., on September 6, 2005 [Tr. 205-210]. Dr. Pennington opined that Plaintiff could perform medium work. [Tr. 206]. It is not the Court's place to resolve conflicts between the reports of consultative examining physicians. See Walters, 127 F.3d at 528. The Court concludes that the ALJ's decision to give great weight to Dr. Pennington's Assessment and little weight to Dr. Summers's opinion was reasonable and well within the "zone of choice within which the Commissioner can act, without the fear of court interference." Buxton, 246 F.3d at 773.

## V.	CONCLUSION

For the foregoing reasons, it is hereby **RECOMMENDED**[4] that Plaintiff's Motion For Summary Judgment **[Doc. 11]** be **DENIED** and that the Commissioner's Motion for Summary Judgment **[Doc. 15]** be **GRANTED**.

Respectfully submitted,

_____s/ H. Bruce Guyton_____
United States Magistrate Judge

---

[4]Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).